UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID ANTONIO RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ et al.,<br><br>Respondents. | CASE NO. 2:26-cv-04036-LK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner David Antonio Rodriguez's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons stated below, the Court grants the petition.[1]

## I. BACKGROUND

Petitioner is native and citizen of El Salvador. Dkt. No. 9 at 2. He entered the country in 2000 without admission or parole. *Id.* In 2004, he was arrested and charged with "Forest/Forest Products Violation," criminal trespass, and theft in the third degree in Mason County, Washington; the record does not indicate that he was found guilty of any of the charges. *Id.* On May 12, 2023, Petitioner filed an Application for Asylum and for Withholding of Removal with United States Citizenship and Immigration Services ("USCIS"), which remains pending. *Id.*; *see* Dkt. No. 1-14.

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

On September 29, 2026, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") officers in Aberdeen, Washington. Dkt. No. 9 at 2. He was served a Notice to Appear ("NTA"), charging him as "subject to removal under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act as a noncitizen "present in the United States who has not been admitted or paroled." Dkt. No. 6-3 at 2. He was taken to the Northwest ICE Processing Center ("NWIPC"), where he remains detained. Dkt. No. 9 at 2; *see* Dkt. No. 6-4 (Notice of Custody Determination).

On October 6, 2026, Petitioner, via counsel, filed a written request for a custody redetermination. Dkt. No. 1-5 at 2. On October 14, 2026, Petitioner submitted over 350 pages of documentary evidence in advance of the bond hearing scheduled for the next day. *Id.* On October 15, 2026, during the bond hearing, IJ Tammy Fitting indicated she would not accept Petitioner's documentary evidence because it was late and because it did not contain pagination as allegedly required. *Id.* at 2–3; *see* Dkt. No. 6-6 at 2:29–4:00[2]. Judge Fitting also did not allow Petitioner time for his six witnesses to testify. Dkt. No. 1-5 at 4; Dkt. No. 6-6 at 11:35–:55, 23:20–23:50. She instead allowed Petitioner to make an oral proffer of evidence; he described his time in the community, letters of character support, employment history, partnership with a U.S. citizen, and pending applications for immigration relief. Dkt. No. 1-5 at 3; *see generally* Dkt. No. 1-8 (documentary evidence).[3]

[2] Although Petitioner argues that "EOIR Policy Manual § 8.3(e)(5) exempts bond proceedings from ordinary Chapter 2 filing deadlines," Dkt. No. 1 at 23, Section 8.3(e)(5) states that if a bond request is made in writing, "[d]ocuments for the Immigration Judge to consider are filed . . . together with the request." https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm/chapter-8-3.

[3] Petitioner submitted roughly 500 pages of exhibits with his habeas petition. Exhibits should be marked to designate specific relevant evidence. *See* LCR 10(e)(10); *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) ("[J]udges are not like pigs, hunting for truffles buried in the record." (citation modified)).

The Government filed a Form I-213—the record of Petitioner's September 29, 2026 arrest—as its evidence for the bond hearing. Dkt. No. 7 at 26–31. Petitioner moved to strike the form, asserting that it contained several significant inaccuracies. Dkt. No. 1-5 at 3; Dkt. No. 7 at 32–38. At the hearing, the Government representative acknowledged that there were aspects the Form I-213 that he could not verify. Dkt. No. 1-5 at 4.[4] Over petitioner's objections, Judge Fitting allowed the Form I-213 into the record but indicated she would weigh it in accordance with the Government's "clarifications" that several parts of the record were not verifiable. Dkt. No. 6-6 at 19:51–20:10. Judge Fitting asked why Petitioner had not applied for asylum despite being in the country for 26 years; Petitioner's counsel then asked for a closed hearing to answer the question without other detainees present, and Judge Fitting did not grant the request, remarking at the 21-minute mark that "it is what it is, he didn't apply," and "we have spent an enormous amount of time on this hearing." *Id.* at 20:25–21:05. Judge Fitting denied bond, concluding that Petitioner is a flight risk because he is single, had been in the United States (unlawfully) for decades, had not filed for any forms of relief, and was unlikely to succeed on the merits of his asylum application. *Id.* at 21:15–23:00.

---

[4] Specifically, three arrest records from March 2000, April 2000, and February 2005 were potentially someone else's records, and the form stated that Petitioner "was ordered removed in absentia from the United States in 1999," although Petitioner first arrived in the country in late 2000. *See* Dkt. No. 6-6 at 10:30–16:20. The Government stated at the hearing that it would not rely on the criminal history in the Form I-213 from the years 2000 and 2005. *Id.* at 12:44–15:35. The Government also stated that it could not confirm the prior removal mentioned in the I-213. *Id.* at 18:04–:38. Respondents concede that the "three other instances of arrest" have "not been conclusively verified," Dkt. No. 5 at 3 n.3, but do not address the allegedly inaccurate inclusion of the 1999 order of removal in absentia, or explain why the inaccuracies were included on the I-213 in the first place.

The inaccuracies do not end there. The Form I-213 also stated that "DHS system queries indicated that [Petitioner] had no pending or approved immigration applications that would allow her to remain in the U.S.," but Petitioner had a pending application for asylum (and is male). Furthermore, Respondents submitted two versions of the disputed Form I-213 without an explanation of why (1) two different versions of the same record exist, (2) only one version was submitted to Judge Fitting, though both versions were apparently executed on the same date (September 29, 2026), and (3) the signature and initials of the same deportation officer are different between the versions. *Compare* Dkt. No. 6-1 at 2–5 *with id.* at 6–9 *and* Dkt. No. 7 at 28–31. These numerous inaccuracies and unexplained abnormalities undermine the reliability of the Government's records.

On October 22, 2026, Petitioner filed a petition for a writ of habeas corpus. Dkt. No. 1. Respondents[5] filed a return, and Petitioner filed a traverse. Dkt. Nos. 5, 10.

## II. DISCUSSION

Petitioner claims that Judge Fitting's flight risk determination was "legally deficient" because she "failed to meaningfully address" his "longstanding residence, stable housing, United States citizen partner, employment history, community support, and pending asylum application," and instead "relied principally on the perceived weakness of his asylum claim" to deny bond. Dkt. No. 1 at 2–3. Separately, he contends that his due process rights were violated by Judge Fitting's decision to allow the government's disputed evidence while denying his own documentary evidence and witness testimony, and by her "reliance on an incomplete assessment of [his] immigration relief and her consideration of materially disputed government records[.]" *Id.* at 22–29. He requests immediate release. *Id.* at 29–33.

Respondents contend that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(a) and argue that his habeas petition should be denied because he has failed to justify waiver of the prudential exhaustion requirement. Dkt. No. 5 at 1.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release

---

[5] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Prudential Exhaustion is Not Required**

Petitioner argues that prudential exhaustion should be excused because the *Puga* factors weigh in his favor and "further administrative review risks irreparable injury." Dkt. No. 1 at 11–15. He contends that he is not bypassing the administrative scheme because he is not challenging Judge Fitting's weighing of the evidence but rather challenging "the fundamental fairness of the proceeding" and whether Judge Fitting's stated reasons "rationally support continued detention." *Id.* at 13–14. Respondents counter that Petitioner should be required to exhaust his administrative remedies by appealing his bond denial to the BIA because it will help to develop the record,

waiving exhaustion will encourage bypass of the administrative scheme, and appeal to the BIA will likely preclude the need for judicial review. Dkt. No. 5 at 5–9.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

In light of the unique facts of this case, the Court exercises its discretion to not require exhaustion. Specifically, as discussed below, Judge Fitting's decision "is so plainly [constitutionally] inadequate that BIA expertise is not necessary to generate a proper record or reach a proper decision." *Cruz-Acevedo v. Scott*, No. 2:26 CV-01654-LK, 2026 WL 1623154, at *4 (W.D. Wash. June 5, 2026). And if most IJs begin issuing decisions with similarly deficient reasoning, risk of encouraging deliberate bypass of the administrative scheme is the least of this Court's concerns. *Id.* The Court now turns to whether the IJ's decision was an abuse of discretion.

### C. The IJ Abused Her Discretion

Petitioner claims that Judge Fitting's bond denial decision violated his right to due process for several different reasons: (1) she "failed to meaningfully apply the individualized flight risk standard required by *Matter of Guerra*," (2) her "cumulative evidentiary restrictions deprived [him] of a meaningful opportunity to establish his eligibility for release," and (3) she relied "on an incomplete assessment of [his] immigration relief and . . . materially disputed government records without receiving Petitioner's documentary rebuttal." Dkt. No. 1 at 19–29. Respondents do not defend the merits of Judge Fitting's decision. *See generally* Dkt. No. 5.

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The allegations in Petitioner's habeas petition—that the IJ abused her discretion when she determined that Petitioner was a flight risk—presents a mixed question of fact and law that the Court has jurisdiction to review. *Id.*

Judge Fitting concluded that Petitioner was a flight risk and denied bond on that basis. Dkt. No. 1-4 (written checkbox order); *see generally* Dkt. No. 6-6 (audio recording of bond hearing including oral ruling). Judge Fitting's rationale, as stated during the bond hearing, was as follows:

> What I'm looking at is, the Respondent is single, he's been in the United States for decades, he's not filed for any forms of relief, there are no other forms of relief identified at this time, and yes, he has been in the United States unlawfully. I do

> have concerns about flight risk given that issue. And I'm not going to find he is a danger based on clarifications with the I-213. . . . Alright. Given also the one-year issue, it seems the are limited forms of protection, so I'm going to find that the Respondent is a flight risk and deny bond.

Dkt. No. 6-6 at 21:15–23:00.

Judge Fitting's stated rationale for finding Petitioner a flight risk is legally deficient because it focused almost entirely on the perceived merits of his asylum claim (the "one-year issue" refers to a purported statute of limitations to bring his asylum claim) and incorrectly stated that Petitioner had not filed for any forms of relief when his counsel stated at the hearing that he had applied for asylum, withholding of removal, and relief under the Convention Against Torture. *See id.* at 5:11–:23. Although Petitioner verbally proffered other evidence relevant to his flight risk, such as his community ties, history of paying taxes, employment authorization document, evidence that he was previously granted TPS status, and the fact that he has a U.S. citizen partner whom he plans to marry, *id.* at 6:11–7:11, Judge Fitting considered only the perceived strength of Petitioner's asylum claim and provided no rational connection between Petitioner's alleged lack of potential forms of relief from removal and his supposed flight risk. This was an abuse of discretion. Although IJs may consider the likelihood that relief from removal will be granted in determining whether a noncitizen is a flight risk, *see Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987), "the lack of potential forms of relief for a potential future removal order[ ]'is not sufficient by itself to deny bond' or establish flight risk." *Segura Serrano v. Scott*, No. 2:26-CV-01268-LK, 2026 WL 1674357, at *8 (W.D. Wash. May 26, 2026) (quoting *Tavurov v. Noem*, No. 2:26-CV-00668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026)); *see also N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *8 (C.D. Cal. Apr. 15, 2026) (noting that the fact that a noncitizen has unresolved claims for immigration relief "does not mean [the] noncitizen cannot be trusted to appear for future court proceedings on that

basis alone”). Furthermore, there is no indication in the record that Judge Fitting meaningfully engaged with contrary evidence or performed the required weighing under *Guerra* at the bond hearing.

For these reasons, Judge Fitting failed to accord Petitioner the process due to him, abusing her discretion and violating Petitioner’s Fifth Amendment rights. *See Cardoza-Garcia v. Hernandez*, No. 2:26-cv-02573-JHC, 2026 WL 2294541, at *4 (W.D. Wash. Aug. 10, 2026) (finding that the IJ abused his discretion in finding that petitioner was a flight risk when he failed to apply the *Guerra* factors, meaningfully engage with petitioner’s evidence, or explain why, in light of that evidence, no amount of bail would be sufficient).[6]

**D. Release is the Appropriate Remedy**

Having found a due process violation, the Court considers the appropriate remedy. Petitioner requests immediate release, Dkt. No. 1 at 29–33, while Respondents argue that the petition should be denied outright, Dkt. No. 5 at 11. Because Petitioner’s bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for his continued detention, the Court concludes that the “typical remedy” of release is appropriate. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (finding that “[h]abeas is at its core a remedy for unlawful executive detention” and the “typical remedy for such detention is, of course, release.”); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (“[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.”); *Soriano*, 830 F. Supp. 3d at 1082 (ordering petitioner’s immediate release after finding no basis for continued detention).

[6] Because the Court finds that relief is warranted on Petitioner’s abuse of discretion claim, it need not address Petitioner’s additional claims.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS the petition for habeas corpus, Dkt. No. 1, and orders as follows:

1. Respondents shall release Petitioner from custody and return his property to him within 24 hours under terms consistent with 1226(a);

2. The parties shall file a Joint Status Report by November 16, 2026, confirming that Petitioner has been released;

3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 13th day of November, 2026.

Lauren King
United States District Judge